All right, let's see. Mr. Root, we'll hear from you. Thank you, Your Honor. May it please the Court, good morning. It's my honor to be here this morning representing the City of Kennett, MO in a case dealing with a somewhat obscure waterway to most people but not to the City of Kennett. It's a waterway known as Buffalo Ditch. It's an 18-mile piece of water that is part of the Little River Irrigation District that reclaimed the boot heel for agricultural productions around the turn of the last century. And the natural conditions in the boot heel lead to low dissolved oxygen in Buffalo Ditch and many of the surrounding ditches. The ditches are maintained. They are graded along the side so that they can serve their intended purpose for agricultural runoff and to provide a little bit of waterway to that part of the world. And we're here because in 2010, in order to comply with a consent decree in the American Canoe Case, the EPA approved a flawed TMDL for Buffalo Ditch. And that TMDL imposed upon the City of Kennett new limitations on its wastewater treatment plant that reduced the effluent allowed from its existing permit with respect to biochemical oxygen demand 90% and with total suspended solids 70%. Counsel, do I understand that the City of Kennett is named by name in the TMDL? Yes, the City of Kennett and the Kennett Wastewater Treatment Plant. Yes, are named by name. How many times are they named in the TMDL? I didn't count it, Your Honor. They're named, I think, throughout the TMDL as they are one of seven permitted point source polluters or point source. It says the City of Kennett or the City, and it mentions your plant. Correct. But you don't want to estimate how many times. I don't have an estimate, Your Honor. Okay. Thank you. Proceed. Yeah, no problem. And the City of Kennett in 2014 challenged the TMDL, alleged that it was an unlawful exercise of EPA's authority under the Administrative Procedures Act and that it was an arbitrary and capricious exercise of EPA's authority under the Administrative Procedures Act. After prolonged briefing in the district court on the merits of those claims, the district court judge concluded that the City of Kennett lacked standing to proceed and challenge the TMDL and that the dispute was not ripe for judicial review. Under this court's case, Iowa League of Cities versus EPA, that is wrong. It can't be reconciled with Iowa League of Cities. The City of Kennett, as Judge Benton points out, is specifically named in the TMDL and its wastewater treatment plant is specifically regulated by the TMDL. So what's the current status then? If the permit that the city had had expired and they can't get a new one until they comply with the TMDL, can they do anything now? Is there some kind of stay in effect? So the current status is the existing permit was continued until a new permit could be issued. And the City of Kennett has been in negotiations with Missouri Department of Natural Resources regarding a permit. A lot of this is outside the record. I want your honors to know that. The EPA admitted in a footnote to its brief that it has objected to the draft permit that the City of Kennett promulgated that the Department of Natural Resources promulgated precisely because the draft permit did not incorporate the effluent limitations and the waste load allocations of the TMDL. But they're currently operating under the preexisting permit. They are. It was continued. They are. Is that going to continue indefinitely until there's a new permit approved? Well, it shouldn't continue indefinitely and there needs to be a new permit approved. And money is being spent now in an effort to comply with the TMDL and participate in the permitting process to get a permit approved. And engineers are working to see whether these requirements can be met. If they can't be met, if there are other requirements that the state could agree to that would be acceptable to the EPA. Today, there is no permit that's acceptable to the EPA that adequately implements the TMDL. And the problem for Kennett is every time it tries to get around these restrictions that are within the TMDL, the EPA returns and says you can't issue a permit that is inconsistent with the TMDL. And that's straight out of the Code of Federal Regulations. The TMDL imposes upon the permitting body waste load allocations. And the federal law requires any permit that is issued to be consistent with the requirements of the waste load allocations as approved in the TMDL. Before you get too far, I address their real main point to you, is that even if you win this lawsuit, you're in worse shape. So, therefore, redressability is what the district court really should have said. And the district court didn't say that. No, I know. We're here to know, though. That's part standing. Address the point. I'd be happy to, Your Honor. What Kennett is seeking in this case is to have this TMDL set aside. One scenario, if they succeed in the lawsuit, is that their waste load allocations in a revised, approved, and lawful TMDL are worse. That is not the only scenario. And, in fact, we think an unlikely scenario. Because the underlying problem is the TMDL itself acknowledges that the 5 milligrams per liter water quality standard for dissolved oxygen may not be the appropriate water quality criteria for this waterway. So your position is you never know what's going to happen, but at least this will delay things and that redresses our injury? The injury is being caused by the TMDL. And if the TMDL is vacated or declared to be unlawful by the district court, which is the relief that Kennett is seeking, many scenarios could follow in which the obligations and restrictions that are imposed on the city of Kennett are different and less onerous than the present TMDL. Right now, they cannot get a permit other than one that complies with this TMDL. They have tried, and EPA has objected. And if EPA did not object, there's a potential, at least, for third-party liability, similar to the American Canoe case, where someone could come and say, no, what are you doing allowing this pollution that's not consistent with the Clean Water Act regulatory scheme. It's a comprehensive scheme that the city and the state and the federal government work to comply with. But the TMDL was rushed in order to comply with the American Canoe consent decree, and as a result imposed restrictions that are based on a water quality criteria that no one, not the state, not the city, not the EPA, has determined is appropriate for these waterways. That's the underlying problem. If there had been more time to develop this TMDL instead of the October 2009 to March 2010 approval, that's from the draft to the end, the state could have worked to revise the TMDL. And in fact, in response to Kennett's specific concerns that it raised in its letter, the state revised the TMDL to include this language about the water quality criteria not being appropriate for this waterway, and that the city or the state would need to make that determination prior to the implementation of these waste load allocations. That needed to be done before the TMDL was approved by the EPA, and on an administrative record that said we do not know whether these water quality standards are appropriate for this waterway, it should not have been approved in the first instance. There is a scenario, as they say, where it could get remanded to the EPA and they could tighten down the restrictions and make things worse for the city of Kennett. We don't know whether that will happen. We think that's unlikely. But it is a scenario that could exist. But today, the TMDL exists. It's causing injury to the city of Kennett. And this court concluded in the Iowa League of Cities case that cities pre-permit application, pre-permitting, have standing to challenge Clean Water Act regulations that have a direct influence on their municipal water authorities. Those claims are ripe before the permits issue, and that's where we are now. Finally, I want to address the EPA's waiver argument. They contend that the city of Kennett, in its comment letter to the state administrative process, did not adequately raise the concerns that it's raised in the district court in order to challenge the TMDL. They're wrong. First, there is no requirement under Missouri's administrative law for specificity in the administrative procedure. Well, wait. There is as you leave it, right? You definitely, in your petition for review leaving state administrative procedure, have to raise the issue, correct?  Under state administrative law? That's correct, Judge. And you've got to have asked for relief and the right relief there. Did you ask for the right relief in the state administrative proceedings? The relief that we asked for in the state administrative proceedings was a different TMDL and more testing and more time, and one that appropriately implemented. Do you think that's the same relief you're seeking in federal court? It is not the same relief we're seeking in federal court. Don't you have to in the state administrative procedure in Missouri? This turns on Missouri procedures, right? It does. I think the EPA says that, too. It turns on what the Missouri requirements are for the public comment period, which is different than the petition for review because we cannot challenge this in state court. We couldn't do what the next step would be in Missouri and ask for it in a petition for review. We had to go to federal court. That was one of my final questions. You don't have any constitutional issues in this case, do you? Because those have to be raised in state court. Other than Article III standing. No, constitutional issues that you should have raised before DNR. We do not, Your Honor. And generally, of course, under the Missouri Constitution, anything an agency does is reviewable. That's right. How does that affect this case? That's wild. Anything that is, if you're aggrieved by agency action in Missouri. I understand that, but address the point. How does that affect at this stage of the game when the Missouri administrative procedure, you can always gripe about any decision by any administrator? Well, the Missouri administrative procedure is going to be controlled in some measure by the TMDL, the procedure that moves forward from here. Missouri cannot adopt a permit, cannot issue a permit to the City of Kennet to operate its wastewater treatment plant that does not incorporate the effluent limitations in this TMDL. And we could challenge the permit later on, but in order to get that permit issued, we need to do the engineering work to try and comply with these effluent limitations or have our engineer and the State Department of Natural Resources negotiate another way to try and get around these. And there is a process for doing that, but ultimately the EPA has something to say about that, too. And so far what they've said is you can't issue that permit. And the problem for Kennet is we keep cycling back to the TMDL. The TMDL is what causes the injury. It can't be avoided unless it's revised or vacated. Kennet sought to have it vacated in the district court. It's causing them an injury. Under this court's precedent, the district judge erred when he granted summary judgment to the EPA on standing and ripeness grounds. I'd like to reserve the balance of my time for rebuttal. If there are no further questions. You may, very well. Thank you. Mr. Gray, we'll hear from you. May it please the Court, my name is Michael Gray. I'm here on behalf of the Environmental Protection Agency. We make a very narrow standing argument based on the particular and peculiar facts and claims raised in this case, and we do not contend where a regulated party has costs of compliance, that it must always wait until the permit is issued before bringing a suit. Our claim is really based on that the city has two central conventions here in its complaint, both of which, if they were to succeed and obtain a judgment from the district court, saying that they were right about those would make them ultimately worse off. The first is that they claim that some of the loading capacity should have been allocated to non-point sources. That, of course, is a zero-sum game. So if you have some allocated to Kennett and none allocated to a non-point source, and you change that and you have some allocated to the non-point source, then that has to come from Kennett. The cap overall stays the same. Hold on. Why do you assume that the total, I think you did it right there, calling it the cap. Why do you assume that stays the same? Because you say zero-sum, you're assuming the goal post, the total, the sum, the cap is not going to be moved. How could it be moved? It might be moved. Because in this case, their claim preceded on the notion that it wouldn't be moved. And, in fact, the only thing they say is there's not. I thought he just argued it could be moved. Well, no, he argued the water quality standard could be moved. That's different than arguing that the allocations under the TMDL could be moved. His second claim, in fact, was that this will not attain the water quality standard. So in order to attain the water quality standard, you would indeed have to move the overall load capacity, but you'd have to move it down. This is an impaired water under the state's 303D list. Once you have an impaired one. What would happen, though, if they did prevail? You said they'd end up worse off, but procedurally, what would happen in the meantime? Would this TMDL would be vacated? Is that the right terminology? The challenge here is actually to EPA's approval of the TMDL. The TMDL is a state document. And so EPA's approval would be set aside and it would go back to EPA. And it may depend on exactly what this court said and how that procedure would play out. But if you had a judgment from the district court saying you have to give some load allocation, this is not good because you didn't give any load allocation to the non-point sources and it won't achieve the water quality standard. Well, then it would be rather extraordinary for EPA on remand to then find the opposite to be true and say, no, we're going to say you can pollute more. And, in fact, it's a rather extraordinary use of the judicial process to come here and tell this court, well, we know it will make us worse off, but when we go back to the administrative proceeding, we'll argue the opposite to EPA and try to make us better off. And their central complaint really is with the water quality standard, not with the TMDL. And their argument is that the water quality criteria for dissolved oxygen can't be achieved. Well, that's an entirely separate process that the state went through to set that water quality standard, and they didn't challenge the water quality standard in that process. When you get to the TMDL process, you take the water quality standard as a given. And what the state is attempting to do. Two sentences behind you. When you said they did not challenge it, they did not challenge it when? When the water quality standard was issued, which was. Passive there. Did you issue it or did Missouri issue it? Missouri issues the water quality standard. It's a similar process where EPA approves. They send a list to EPA and EPA approves, but it's on Missouri's. Is that then fixed for all time? It would be the state that would reconsider that. Here we have a challenge to EPA's approval of a TMDL, but the TMDL has to take the water quality standard as it is. But suppose your approval were vacated. Is the water quality standard then going to be fixed for all? The water quality standard would be what it is. You would have to go through a separate process to change the water quality standard. What they're saying is that, well, if you vacate the approval, maybe the state will reconsider the water quality standard. Well, the state, as it has said, can reconsider the water quality standard, regardless of whether the TMDL is in place or not. So it doesn't make any difference. But then they have hope. No. Well, hope isn't the standard, right? The standard for addressability is you have to show that you will likely obtain relief that will redress your injury that is not speculative. And it's entirely speculative to say, well, if you set aside a TMDL, maybe the state will reconsider a water quality standard. Well, I thought their claim of redressability is that it delays the injury because they don't have to comply immediately with the TMDL. Well, I think where this Court has said, you know, they cite the National Parks. That's not speculative. Now, whether then it will get better or worse, we don't know. Why isn't it enough to delay the – why isn't it enough to redress the injury if it delays the – if the relief would delay the necessity of incurring these compliance costs and so forth? Right. And I want to get a couple points about that. The first is I would go back to, again, what they're asking for is they're coming in and saying, well, we know it would make us worse off, but it won't make us worse off until later. So that's kind of a delay. But where this Court, like in the National Parks Conservation Association, has mentioned delay in passing as potential redressability, it's been delay with a possibility of – in the direction of redressability. But that's not what the actual sentence says from National Parks, right? It says avoids or at least delays the injury, period, to that sentence, correct? But in the context of that case, I mean, the claims in that case were ones that, if they won and what the agency did, what they were asking for, then they would have had complete redressability. And the Court said, well, at the very least, even if they don't ultimately get it, they will obtain some delay. Here it's very different where what they're asking, what they're saying, if the agency actually did it, it would make them worse. And they're saying, well, but we'll have some time in the middle. And that's a different, I think, kind of delay. And, of course, the delay here, you don't know how much it would be. This is a – as I said, the vacature would be of EPA's approval. The TMDL itself wouldn't be changed unless the state changes it. So we go back to EPA. That may start the – you know, it's only a 30-day clock for EPA to review it. One possible outcome is EPA can say, okay, well, if the Court found the explanation wasn't good enough from EPA on why this TMDL would implement the water quality standard, then EPA would go back and say, well, we're going to take the TMDL as it is and give a better explanation. So you get 30 days, another 30-day review. One possibility would be that it goes back to the – EPA goes back to the state and says, let's think about other ways to do the TMDL. Then you may have longer delay. But I think you're talking about a little bit of delay designed solely for delays purposes and not designed to get ultimate relief. The idea that, well, anything might happen. I mean, that is a standard that applies sometimes in the procedural rights cases like under the National Environmental Policy Act where an agency proposes to do something and they have a public process. And, you know, you go through and you say, well, you didn't do the process right. And the courts have said, well, in that case, we can't be sure that when they go through the process again the result will be any better, but we're going to relax the redressability standard. That might happen. But this is a substantive rights case where they're saying, no, that doesn't comply with the Clean Water Act's standards. And in that kind of case, they have to show that it's likely and not speculative that their injury will be redressed. And so this idea that, yeah, we know a decision from this court would put us in a position where EPA would be sort of skewed towards making us worse off, but maybe it will be better. And that's not – it's a strange case, but that's not really what standing – that's not how you demonstrate your standing in this case. Why is this just coming up for the first time in the Court of Appeals? Did you argue this point to the district court? We did. We did argue it to the district court, and the district court relied on a different standing theory. You also argued that theory in the district court? Yes. We argued that the theory we're presenting now is the theory we presented to the district court. No, no, no, no. The injury in fact theory that the district court adopted, did you also advance that? No, we did not advance that theory particularly. I think there may have been one or two sentences that sort of hinted at – that there was this Missouri State process out there, but that was not the thrust of our argument. As we said, we think really the district court's rationale is better conceived of under a prudential ripeness doctrine. No, we did not argue ripeness to the district court. At all, right? At all. You mentioned injury in fact, but you – I'm just – this is a question. You mentioned injury in fact, but didn't really argue it, and then you didn't argue ripeness at all. I believe that that's correct, yes. And you didn't argue waiver there at all? No, we certainly did. We certainly argued the forfeiture argument in our summary judgment briefing. Well, let me ask you this. On arguing the waiver, did you argue it under Missouri administrative law? No, our argument is under federal law. The law – well, we did – we certainly pointed to the Missouri procedures, but the overarching argument here is one of federal law, one of the federal administrative law created by the Supreme Court in the Vermont Yankee case and the public citizen case that says where you – because remember, we're dealing – even though it's a state TNDL, we're dealing with a federal administrative process here. But it's accomplished before the state and the state administrative procedure. Yes. The state has – what EPA's regulations say is that because we have a 30-day approval process under the statute, the state procedures will be – the state public review will serve as EPA's public review. So when EPA gets the document, it looks at the TNDL and it looks at all the comments. And what we're saying is that under federal administrative law, you have to present your comments to the agency. So the comments under the state public review procedures are the comments that are submitted to EPA and should be taken as such. So if you don't participate, it really doesn't matter so much what Missouri's procedures are. The fact is that they give the procedures, that there's an opportunity to come in and make your claims. And it's – this court should not be in the business of saying, well, EPA's approval is no good on the basis of claims that EPA wasn't able to evaluate because they were never submitted in the public process before the state. And so that's the contours of our argument on the forfeiture. Well, do you believe there's a difference between – Missouri makes a distinction between issues and arguments. You do have to present an issue to the administrative body, but you don't have to present specific arguments to the administrative body. Do you think that's EPA's view or not of how it should work? EPA's view is based on the public citizen case, which is that arguments have to be raised to the administrative body with some specificity. And so you can't just make a general claim, but they have to be made with some specificity. And here, you know, the general comments that they submitted to the state don't rise to that level. And what about the relief aspect? You heard me tell the other party. Yeah, I'm – Missouri says you've got to seek the relief at the administrative agency you ask for in court. Yeah, I'm not sure that – I would have to go back and look at those cases. I'm not sure that – But, I mean, I'm talking about federal. I don't think as a matter of – yeah, I'm going to have to go back and look at the federal cases to see if there's a relief aspect. I think usually as long as the issues and arguments are presented with some specificity, then that's fine. Yeah, thank you. Yes. So, in conclusion, again, our submission is that the plaintiffs in this very specific case don't have standing based on the specific way that they've pleaded the case and the claims that they've brought. And if the court is inclined to disagree with that, we would say that those claims were not presented well enough in the administrative process and were forfeited and the court can affirm on that alternate ground. So, again, on redressability, you're saying because their specific claim logically would result in – And they have been denied it. Would make them worse off. Even delaying the implementation of a TMDL does not redress their injury? Yeah, I think there – I mean, is that an empirical question? Well, I – Time value of delay is more than they would be worse off? I mean, how do we know that? Well, I think because the ultimate direction would be to make them worse off. I think delay may have some component where the ultimate direction of the suit would be to make them better off. But I don't think just delay – I mean, it would be rather interesting for this court to adopt a position that it's just fine to come to court only for purposes of delay. Well, doesn't the National Parks case do that by saying or even delays? I don't think so. I don't think the straight mention of delay – Or at least delays on this court. Or at least delays. Opens up the use of the courts to bring a suit where you know even if you win, you'll be worse off, but you won't be worse off until later. That seems to be right. You think if we read that in context, it can be cabined, that language of delay? Yeah, I think that's right. It should be cabined. It should be cabined, yes. And, again, the real problem here that they have is with the water quality standard. That's another way to get around the delay issue here is that they want to delay implementation of the TMDL to have a third party, the state, maybe take into account a water quality standard, which is just too speculative to meet the case law from the Supreme Court on standing. Thank you. All right. Thank you, Mr. Perry. Mr. Root, you have some time for rebuttal. Thank you, Your Honor. On redressability, the TMDL is causing injury to the city of Kent. That's conceded by the EPA. So we have injury, in fact, and we have causation. And the city has asked the district court to vacate the TMDL. The district court has not done that. The district court has not given the order that EPA suggests would be forthcoming, which is that EPA, you need to revise this for the non-point source problem Kenneth has pointed out and not do anything else to the TMDL in order for it to be lawful. No, he's not saying the district court has done it. He's saying what you've asked the district court to do would trigger a process that makes you worse off. And there is a scenario where that could happen. That's the scenario you're logically urging, isn't it? No, it is not. What we've urged the district court, and I've recited it again here, this TMDL should never have been approved because it was unlawful, both because the water quality standards could never be implemented in this waterway given the natural conditions. But you're not attacking the water quality standards. That's another point he makes, right? On the unlawful point. On the arbitrary and capricious point, we say, and again, we're in a land of deference on that point. We are saying the EPA acted arbitrarily and capriciously to approve a TMDL based on a water quality standard when the TMDL itself says that the water quality standard may not be appropriate. If it is determined that the current water quality criterion for dissolved oxygen is appropriate, the waste load allocations will be implemented. If it is determined not to be appropriate and a new dissolved oxygen criteria is promulgated, the new waste load allocations will be calculated and implemented. What are they referring to there, if it is determined to be appropriate? Isn't that in a process that's already been completed now? It should have been completed and was not, is our view. And that was part of the contentions that were made in the district court record. And the city of Kennett did not seek to delay for delay's sake. At the time of its comment, before this was even approved, it said to the State Department of Natural Resources, we would like more time because we think this dissolved oxygen criteria may not be appropriate for this waterway, and what we would like to do is do a little more sampling so that when you get to a TMDL, which is a binding and important document in the Clean Water Act enforcement realm, you've got the right standards you're titrating to. The state and the EPA said, we're not doing that, we're going to go ahead and approve this, even with language that indicates these may not be the appropriate standards. And so if we, the redressability problem I think goes away on the record before this court. Just because there's a scenario where in a future iteration after relief is granted, we may be worse off. That could be in every case. We don't know what's going to happen. What we hope to happen is the district court concludes this was unlawful and arbitrary and capricious and directs the EPA to work with the Department of Natural Resources on an appropriate water quality standard before final approval of a TMDL. You want the district court to direct EPA to work with the state on changing the water quality standard? We want the district court to vacate the TMDL. That's really all the district court has authority to do. In the reasoning around the order. But then EPA has got 30, he just said you have 30 days. EPA can do what it will do. And then there's a separate, you know. How can it change the water quality standard? It can work with, it can have 30 days to either approve or not the TMDL that is before it. And it could say we are not going to approve a TMDL until we have certainty about the water quality standard. We don't want to approve a TMDL based on a water quality standard that's not appropriate for a waterway. That's an entirely reasonable thing to have happen. And, in fact, the State Department of Natural Resources has been working to implement a permit that does not contain these effluent limitations, which EPA has objected to and won't allow. All right. Very well. Thank you for your argument. Thank you, Your Honor. Thank both counsel. The case is submitted. And the court will file an opinion in due course. Thank you all for coming.